IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULINE HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 C 7059 |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendant City of Chicago has moved to dismiss certain of the claims of plaintiff Pauline Hernandez pursuant to Federal Rule of 12(b)(6). For the reasons stated below, the Court grants the motion in part and denies it in part.

## Background

In her amended complaint against her former employer the City of Chicago, Pauline Hernandez, a woman of Mexican descent, alleges that in September 2000, she was hired as a cashier in the Streets and Sanitation Department. Starting in January 2004, Hernandez says, her male, non-Hispanic supervisor Lacey Lavelle made repeated offensive comments regarding her national origin and gender and subjected her to discriminatory work conditions. Starting in March 2004, Hernandez says, a male, non-Hispanic co-worker named Charles Russell began to sexually harass her. Hernandez says that she complained about this to management but that nothing was done.

1

As a result of this conduct, Hernandez alleges, she filed a charge of discrimination with the Equal Employment Opportunity Commission. Hernandez signed the charge on May 26, 2004. The record does not disclose when she appeared at the EEOC to fill out the intake questionnaire from which the agency prepared the charge, though this was likely earlier than the date Hernandez signed the charge. In the charge, Hernandez alleged discrimination based on gender and national origin, as well as sexual harassment, from January 2004 through May 15, 2004. She described harassment and disparate treatment by Lavelle, sexual harassment by Russell, and a written reprimand she had received on May 16, 2004. Am. Compl., Ex. A.

The City terminated Hernandez's employment in December 2004. On September 12, 2005, Hernandez filed a charge with the IDHR. The narrative portion of the charge states as follows:

> I began employment with Respondent in September 2000. In or about May 26, 2004 I filed a charge of discrimination against Respondent (EEOC Charge Number 21B-2004-02165). Thereafter, Respondent began disciplining me and discharged me on or about December 2, 2004.
>
> I believe I have been discriminated against based on retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.*, Ex. C. In the section of the charge form listing the type(s) of discrimination alleged, only for box for "retaliation" is checked; the other boxes, including those for race, color, sex, and national origin, are blank. *Id.* The EEOC issued Hernandez notices of right to sue on both her charges on September 27, 2006. *Id.*, Exs. B & D.

In her amended complaint, Hernandez alleges the facts as the Court did in the initial paragraphs of this order. Though she allege that Lavelle began harassing her and subjecting her to disparate treatment in January 2004 and that Russell began harassing her in March 2004, she does not say when that conduct ended or whether it ended prior to her termination. In Count 1 of her amended complaint, Hernandez alleges that she was subjected to a hostile work environment and was terminated based on her national origin ("Hispanic – of Mexican descent," see Am. Compl. ¶ 26); she alleges this violated Title VII of the Civil Rights Act of 1964. In Count 2, Hernandez alleges sexual harassment in violation of Title VII, based on Russell's alleged conduct and the City's alleged refusal to take action after Hernandez complained. In Count 3, Hernandez alleges gender discrimination under Title VII, based on her contention that she was objected to differential treatment, and later terminated, because she is a woman. In Count 4, Hernandez alleges that the City disciplined and terminated her, in violation of Title VII, in retaliation for her complaints about discriminatory practices and her May 2004 EEOC charge.

The City has moved to dismiss certain of Hernandez's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, it has moved to dismiss her Title VII national origin and gender discrimination claims concerning her termination (parts of Counts 1 and 2) on the ground that they are beyond the scope of her EEOC charge, and

it has moved to dismiss her Title VII retaliation claim for any discipline other than termination, on the ground that the discipline she alleges is not actionable.

## Discussion

**1. Termination claims based on national origin and gender**

Before filing a lawsuit under Title VII, the employee must "afford the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "However, because EEOC complaints are most often compiled without assistance of counsel, we afford plaintiffs considerable leeway and ask only whether a claim set forth in the complaint is 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1035 (7th Cir. 2004) (quoting *Cheek*, 31 F.3d at 500).

In her December 2004 charge that she made following her termination, Hernandez specifically alleged that she was terminated in retaliation for her earlier complaints. She did not allege that the termination was premised on her national origin or her gender. Following briefing of the motion to dismiss, the Court asked Hernandez's counsel to obtain from the EEOC a copy of her intake questionnaire – a form typically filled out by the complainant herself – so the Court could determine whether Hernandez might have made allegations of national origin or gender-based termination. (Courts sometimes encounter situations in which the complainant asserts various types of

discrimination, but the EEOC employee who prepares the charge form fails to include all of them.)  As in the charge, however, Hernandez asserted only retaliation in her intake questionnaire.  *See* Pl. Suppl. Resp., Ex. A.  Even after giving Hernandez the leeway required by *Cheek* and its progeny, the Court is constrained to conclude that she has not exhausted her claims of national origin and gender-based termination and thus cannot pursue those claims in court under Title VII.

Hernandez may, however, pursue a claim under 42 U.S.C. § 1981 based on her allegation that she was terminated because she is Hispanic.  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  The  term "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.* § 1981(b).

Though section 1981 applies only to allegations of discrimination based on race, not national origin, the Supreme Court has defined race "broadly to include identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n.4 (7th Cir. 2006) (citing *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)).  Numerous courts have held, and this Court agrees, that discrimination against Hispanics is covered by section 1981.  *See, e.g., Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d

5

840, 850 (9th Cir. 2004); *Arguello v. Conoco. Inc.,* 330 F.3d 355, 358 (5th Cir. 2003); *Rivera v. United States,* 928 F.2d 592, 608 (2d Cir. 1991); *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir. 1987).

Though Hernandez did not cite section 1981 in her amended complaint, a plaintiff is not required to plead a legal theory. *See, e.g., Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007). Because her allegations of termination based on the fact that she is Hispanic gives rise to a claim under section 1981, she may pursue a claim under that statute even though she did not cite it. *See id.*

For these reasons, the Court dismisses Count 1 of the amended complaint to the extent it includes a claim under Title VII for national origin or race-based termination and dismisses Count 2 to the extent it includes a claim for gender-based termination. Hernandez may, however, continue to pursue under Count 1 a claim of termination based on the fact that she is Hispanic, pursuant to 42 U.S.C. § 1981.

**2.     Retaliation charge based on discipline other than termination**

The City argues that the Court should dismiss Hernandez's retaliation claim to the extent it involves any sort of retaliatory conduct other than her termination. The Court disagrees. In her September 2005 EEOC charge, Hernandez stated, without further detail, that after she filed her first charge, the City "began disciplining me and discharged me." In seeking to carve back Hernandez's retaliation claim, the City relies on *McGoffney v. Vigo County Div. of Family and Children*, 389 F.3d 750 (7th Cir. 2004), in which the court stated that certain vague allegations in an EEOC charge were

insufficient to put the EEOC or the employer on notice of the particular adverse action about which the plaintiff was complaining. *Id.* at 752. The same is not true in this case. Whereas the EEOC charge in *McGoffney* involved discrete discriminatory acts – turn-downs of multiple employment applications – Hernandez's 2005 charge involves a single course of retaliatory conduct over a finite period, leading up to termination on a date identified in the charge.

In any event, an EEOC charge does not have to meet anything akin to the particularized-pleading requirements of Federal Rule of Civil Procedure 9(b). The Seventh Circuit has made it clear that a plaintiff need not allege in an EEOC charge each and every fact that underlies her claim. *Haugerud v. Avery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001); *Cheek*, 31 F.3d 501. For this reason, Hernandez's retaliation claim is not subject to dismissal, even in part, on the ground that her underlying EEOC charge was too vague.

Finally, the Court declines to carve back Hernandez's retaliation claim to preclude her from relying on a May 2004 reprimand identified in her complaint. Among other things, a reprimand that is preliminary to an employee's termination is actionable under Title VII. *See Coolidge v. City of Indianapolis*, 505 F.3d 731, 735 (7th Cir. 2007). Second, the standard for whether allegedly retaliatory conduct is sufficiently adverse to be actionable under Title VII is whether it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern Santa Fe*

*Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006) (internal quotation marks and citation omitted). Because "[c]ontext matters" – in other words, "the significance of any given act of retaliation will often depend upon the particular circumstances," *id.* at 2416 – a Rule 12(b)(6) motion does not present an appropriate occasion for determining whether the reprimand is actionable, either by itself or together with other related conduct.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss in part and denies it in part [docket no. 35]. The Court dismisses Count 1 of the amended complaint to the extent it includes a claim under Title VII for national origin or race-based termination and dismisses Count 2 to the extent it includes a claim for gender-based termination. Defendant's motion is otherwise denied. And, as the Court has stated, plaintiff may continue to pursue under Count 1 a claim of termination based on the fact that she is Hispanic, pursuant to 42 U.S.C. § 1981. Defendant is directed to answer the complaint by no later than April 21, 2008.

_____
MATTHEW F. KENNELLY
Date:  March 31, 2008            United States District Judge